## RAYMOND *v.* MOORE, WILSTACH & CO.

Gunn, in 1830, procured a copyright for, and published, "Gunn's Domestic Medicine and Poor Man's Friend; in 1838 he sold and transferred one-half his interest to Raymond, in trust for Raymond's wife and children, covenanting that he would not transfer it to any one else, and that he would prepare a larger edition, which Raymond was to publish at his cost; but the profits were to be equally divided, and so of every new edition of the work. In 1858, Gunn, having prepared another edition, under the title of "Gunn's New Domestic Physician and Home Medicine," sold it to the defendants with the knowledge, but without the consent of Raymond, and the defendants, in 1858, published the work, and continued to print and sell it till 1870, when Raymond brought suit to compel them to account to him for one-half of the profits of the publication.

*Held,* that when a party claims to hold another as a trustee of personal property, under a mere constructive and not an express trust, of which he had notice, he must assert the claim within four years from the time when the trust is alleged to have originated, in analogy to the statute limiting actions for the detaining of personal property, and that this action is, therefore, barred by lapse of time.

*E. L. Anderson,* for plaintiff.

*Hoadly & Johnson,* for defendants.

TAFT, J.   This is a suit brought to compel the defendants to account to the plaintiff for one-half of the profit made by them in the sale of " Gunn's Domestic Medicine and Poor Man's Friend."

In 1838, Dr. John C. Gunn obtained a copyright for a book compiled by him, under the said title. His copyright was procured in the Eastern District of Tennessee. One-half of his interest in this work Gunn sold and transferred to Raymond, in trust for his wife, Margaret, and their children. This transfer, however, comprised but a part of the territory of the United States; and in the contract of sale Gunn agreed to furnish matter for another edition of a larger size. Matter for such new edition was furnished

by Dr. Gunn, and published by the plaintiff, Raymond, under the title of "Gunn's Domestic Medicine; or, Poor Man's Friend in the House of Affliction, Pain, and Sickness; Raymond's Edition."

This work was conveyed to Raymond, in trust for the wives of Gunn and Raymond, respectively, and their children, by deed, dated November 14, 1839. It had been copyrighted in Philadelphia the same year. The agreement of 1838 had conveyed Dr. Gunn's interest in the first book, and all future editions, which Gunn was to furnish material for and correct, and Raymond was to publish and sell.

The plaintiff claims that this contract bound Gunn to give Raymond, in trust, the benefit of any future edition of the work.

In 1842, the interests of the wives of Gunn and Raymond in the work were, by agreement, severed, so that each should have a separate interest, to be taken care of by her separate trustee.

The sale and the joint or several enjoyment of the profits went on for about twenty years, till 1858, which was twenty-eight years from the issuing of the original copyright; when Dr. Gunn, having prepared the material for a new edition of the old book, or a new work, procured another copyright, under the title of "Gunn's New Domestic Physician; or, Home Book of Health," and with an imprint as of the 100th edition. This book and copyright Gunn sold to the defendants, who have from 1858 to the present time published and sold it. The plaintiff claims that this is merely a new edition of the "Domestic Medicine and the Poor Man's Friend," and that the sale and transfer to the defendants was a violation of the plaintiff's right under his contract with Dr. Gunn, and that the defendants took the new copyright with knowledge of the plaintiff's right; that they have made large amounts of money by the sale of the work, and should account to plaintiff for his half of the profits.

The first defense urged is, that the cause of action stated in the petition is an infringement of copyright, and is not within the jurisdiction of this court, but belongs to the exclusive jurisdiction of the United States courts; but we do not so regard it. The ground of action can not be the violation of the copyright in 1830; for that copyright expired before this book was published by the defendants. And although it might be claimed that the subsequent copyright for the second edition had not expired, and might be regarded as violated by the last editions, yet such is not the actual complaint. The complaint is, that the contract between Gunn and the plaintiff has been violated by Gunn and the defendants, acting in concert, and with full notice of the plaintiff's right in the book and in all its improvements and editions.

We conclude that the plaintiff's suit can not be defeated for want of jurisdiction in this court to try the issues.

The next defenses are the three forms of the statute of limitations. The breach of contract which forms the ground of this action, commenced in 1858, twelve years before this action was brought.

The plaintiff says that it was a breach of trust, which is not barred by the statute. There is no privity of contract between the defendants and the plaintiff, and therefore it can not be said that the defendants have violated a contract with him. Gunn may have done so. A suit against him would be for a violation of his contract, and for aught we can see would be liable to be barred by the limitation of actions on written contracts. But we regard the claim of the plaintiff as the assertion of a constructive trust.

The exception contained in section 6 of the Code, by which it is provided that title II. of the Code shall not apply to continuing and subsisting trusts, may prevent this claim from being barred by the statute. But we think that the Code has not changed the rule in regard to trusts. The fact of the defendants publishing and disposing of this book and denying any right in it, was well known to the plaintiff

from the very commencement of the publication.    Twelve years were allowed to pass by before any suit was brought to enforce the claim of the plaintiff.    Lapse of time bars stale claims in equity, in analogy to the statute of limitations.

An interesting case on this point is to be found in 60 Pa. St. 290, Ashurst's appeal, where it was held "that where a party claims to hold another as a trustee of personal property under a constructive trust, he must assert his claim within six years from the time when it is alleged to have originated, in analogy to the statute of limitations."    Page 315.    By our statute of limitations actions for the recovery of personal property, or actions for detaining personal property, must be brought within *four years* (Code, sec. 15), instead of six years, as in Pennsylvania.

The case made by the plaintiff, we think, is that of a constructive trust of personal property, being an interest in the book and the proceeds of its sale.    Now, although the statute of limitations does not in terms apply to this constructive trust, yet it seems to us to be a case which, in its nature, ought to be regarded as analogous to that of the personal property of one detained in the possession of another.    By the statute such property could not be recovered after four years; in analogy to which we think the same rule is to be applied to this case.    To the same effect are Adams' Eq. 62; Story, 152 a; *Wentworth* v. *Lloyd*, 32 Beavan, 467, affirmed in 10 H. L. C. 589; *Hovende* v. *Lord Annesley*, 2 Sch. & Lef. 633; 17 Ves. 97; *Bonny* v. *Ridgard*, 4 Browne's Ch. Cas. 138. But the case most in point to support the view we have taken is that of *Clegg* v. *Edmondson*, 8 De Gex., McN. & G. 787.    A number of persons were partners in a mine held by lease expiring September 29, 1846.    In July, the managing partners, who were trustees for the company, gave notice of dissolution, and in August agreed with the landlord for a new lease.    In September, they gave the others notice of their intention to apply for a new lease.    In December, a new lease was executed to them in pursuance of the August

agreement.   The others never assented, but claimed an interest, not, however, filing a bill until 1855; that is, nine years after the constructive trust arose.   It was held, that having, with full knowledge of their rights, founded on a *constructive, not express trust,* allowed the others to carry on the business so long, they were barred.   In commenting on this case of *Clegg* v. *Edmondson,* Judge Strong, in 60 Pa. St. 320, says, "Here there was an undoubted trust, but the Lords Justices, Bruce and Turner, considered the laches aggravated in view of the hazardous nature of the business asserted to have been carried on in trust for the complainants."

The business of working a mine may not inaptly be compared to the publishing of "Gunn's New Domestic Physician, or Home Book of Health," which at most can not be regarded as more than a new lease of the "Domestic Medicine and the Poor Man's Friend, in the Homes of Affliction, Pain, and Sickness."

The petition must be dismissed.

[Leave to file a petition in error in the Supreme Court refused.—EDS.]